**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-1720**

───────────

TRACY W. PENLAND,

> Plaintiff - Appellant,

> v.

METROPOLITAN LIFE INSURANCE COMPANY,

> Defendant - Appellee.

───────────

Appeal from the United States District Court for the District of South Carolina, at Anderson.  Henry M. Herlong, Jr., Senior District Judge.  (8:21-cv-03000-HMH)

───────────

Argued:  October 26, 2023                    Decided:  April 9, 2024

───────────

Before WYNN, HARRIS, and BENJAMIN, Circuit Judges.

───────────

Vacated and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Wynn and Judge Benjamin joined.

───────────

**ARGUED:**  M. Leila Louzri, FOSTER LAW FIRM, LLC, Greenville, South Carolina, for Appellant.  James Derrick Quattlebaum, HAYNSWORTH SINKLER BOYD, P.A., Greenville, South Carolina, for Appellee.  **ON BRIEF:**  Jonathan D. Klett, HAYNSWORTH SINKLER BOYD, P.A., Greenville, South Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Tracy W. Penland sued Metropolitan Life Insurance Company ("MetLife"), alleging that it violated the Employee Retirement Income Security Act of 1974 ("ERISA") when it terminated his long-term disability benefits. The district court heard the case on a stipulated record and under a specialized case management order for ERISA benefits claims. Appearing to employ a "quasi-summary-judgment" approach used by some courts in ERISA benefits cases, the court made detailed factual findings on which it relied to affirm MetLife's determination.

Soon after the district court's ruling, this court decided *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951 (4th Cir. 2022), rejecting the quasi-summary-judgment procedure and clarifying the need for a bench trial pursuant to the Federal Rule of Civil Procedure 52 when there are genuine and material disputes of fact in an ERISA benefits case. Because the district court did not have the benefit of *Tekmen* when it heard Penland's case, we must vacate the judgment and remand for a Rule 52 bench trial consistent with *Tekmen*.

## I.

## A.

Penland became disabled in 2015 while employed at Continental Automotive, Inc., and was approved for benefits through a long-term disability plan insured by MetLife. That plan generally extended coverage to people who were disabled as a result of sickness or

2

accidental injury, were receiving appropriate treatment, and still proved unable to earn a specified percentage of their pre-disability income. J.A. 1499-1500.

There were, however, certain plan limitations, and one of them directly affected Penland. The plan imposed a maximum lifetime coverage period of 24 months on benefits for neuromuscular, musculoskeletal and soft tissue disorders – a category that included the degenerative disc disease from which Penland suffered. J.A. 1520. Accordingly, MetLife advised Penland that to maintain coverage past 2018, he would have to show continued disability stemming from a "non-limited medical condition" – that is, a medical condition not subject to the two-year restriction.

When Penland provided notice that he also suffered from certain non-limited conditions, MetLife engaged independent physician consultants to review his medical records. Ultimately, MetLife determined that Penland's non-limited conditions were not so severe that they required work restrictions. It followed, MetLife concluded, that Penland was no longer disabled under the terms of its plan, and Penland's benefits were terminated in January of 2021. Penland's internal appeal to MetLife was unsuccessful.

**B.**

Penland then filed an action against MetLife in federal district court under ERISA, which authorizes a plan beneficiary "to recover benefits due to him . . . to enforce his rights . . . or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To hear Penland's claim, the district court employed its "Specialized Case Management Order" for ERISA benefits cases. J.A. 13-15. Pursuant to that order – and as is common in ERISA benefits cases – the parties agreed to a stipulated record,

3

consisting of the evidence before the plan when benefits were denied and Penland's internal appeal was considered. *Penland v. Metro. Life Ins. Co.*, No. 8:21-cv-03000-HMH, 2022 WL 2235863, at *1 (D.S.C. June 22, 2022); J.A. 17, 20-22.

Because the benefits plan did not give MetLife discretionary authority to make coverage decisions, the district court concluded, the court would review its denial of benefits de novo. *See Penland*, 2022 WL 2235863, at *13-14; *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 165 (4th Cir. 2013) ("In the ERISA context, courts conduct de novo review of an administrator's denial of benefits unless the plan grants the administrator discretion to determine a claimant's eligibility for benefits, in which case the administrator's decision is reviewed for abuse of discretion."). That meant, as the district court explained, that it would "examine all of the evidence in the record and decide whether or not the plaintiff in [the] case is totally disabled without giving any deference to the plan administrator's decision to deny or terminate disability benefits." *Penland*, 2022 WL 2235863, at *14.[1]

And that is exactly what the district court did. Where there were disputes of fact in the record, the district court addressed and resolved them anew. Penland, for instance, argued that he fell within a "radiculopathy exception" to the two-year limit on benefits, citing a treating physician's diagnosis of radiculopathy. But the district court disagreed,

---

[1] MetLife disagreed with the district court on this question, arguing that the plan did vest the plan administrator with discretion and that the court therefore should review only for an abuse of that discretion. *Penland*, 2022 WL 2235863, at *13. But MetLife does not pursue that argument on appeal, and so we do not address it further.

crediting instead the two independent medical consultants who opined that radiculopathy was not supported by Penland's treatment record. *Id.* at \*15-16. The district court similarly credited the independent medical consultants over a treating medical provider when it came to whether Penland's non-limited conditions would require restrictions on his work. *Id.* at \*16-17 (rejecting Nurse Cox's opinion that Penland is unable to work). The district court also resolved in MetLife's favor a dispute over the amount of Penland's pre-disability earnings, for purposes of whether Penland could qualify as disabled under the plan. *Id.* at \*18.

At no point in its decision did the district court indicate or suggest that it was making its factual findings pursuant to a bench trial under Rule 52 of the Federal Rules of Civil Procedure. Nor did it style its opinion to comport with the requirements of that rule. *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately."). At the same time, the court did not purport to be applying the Rule 56 standard for summary judgment, which may be granted only when there is "no genuine dispute as to any material fact." *See* Fed. R. Civ. P. 56(a). Instead, the district court conducted a thorough and painstaking analysis of the record, resolving material factual disputes and weighing the credibility of various medical providers, and then, based on those findings, entered judgment affirming MetLife's termination of Penland's benefits. *Penland*, 2022 WL 2235863, at \*18.

Penland timely appealed the district court's judgment. J.A. 1567.

5

**II.**

At the time the district court issued its decision, there was a lack of clarity in our circuit – and among circuits – on the proper procedure for ERISA denial-of-benefits cases. Some courts have concluded that when review is confined to a stipulated administrative record, as it often is in such cases, a kind of quasi-summary-judgment process is appropriate. *See, e.g.*, *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 516-17 (1st Cir. 2005); *see also Tekmen*, 55 F.4th at 958-60 (describing cases). Under this modified version of summary judgment, "the non-moving party is not entitled to the usual inferences in its favor," and the district court is not bound by the usual restriction on "weigh[ing] the evidence or mak[ing] credibility determinations." *See Tekmen*, 55 F.4th at 959 (internal quotation marks omitted). Instead, the district court independently weighs the "facts and opinions in [the] record" and determines for itself whether the claimant can show he is disabled within the meaning of the policy. *Orndorf*, 404 F.3d at 518; *Tekmen*, 55 F.4th at 959-60.

After the district court ruled, we rejected that hybrid procedure in *Tekmen*. 55 F.4th at 961. Summary judgment, we explained, is reserved for cases in which there is no genuine issue of material fact. *Id.* Summary judgment in any form is simply "not appropriate" when a district court must make factual findings that implicate a material issue. *Id.* at 960 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). And otherwise, we reasoned, a district court's fact-finding in the guise of summary judgment would be subject, like other summary judgment rulings, to de novo review on appeal – requiring "redundant factfinding by the appellate courts" and giving "district

6

courts little reason to invest the time in factfinding necessary in cases with genuine disputes of material fact." *Id.* at 961.

Instead, we held, if a stipulated administrative record gives rise to a genuine dispute about "the cause, severity, or legitimacy of an individual's impairment," *id.* at 960, district courts should resolve those disputes and render a judgment through the mechanism provided by the Federal Rules of Civil Procedure: a Rule 52 bench trial. *Id.* at 961. And those factual findings will be reviewed only for clear error – the "typical rule for our review of a Rule 52 judgment," and a deferential standard that keeps the primary "role of finder of fact" with the district courts to which it belongs. *Id.* at 961-62.

Unfortunately, this court's important clarification in *Tekmen* came only after the district court's ruling here. As a result, it seems the district court – through no fault of its own – employed the quasi-summary-judgment procedure we later disavowed in *Tekmen*. As noted above, the district court gave no indication, express or otherwise, that its factual findings and credibility determinations were the product of a Rule 52 bench trial. Instead, its ruling bears the hallmarks of the modified summary judgment approach, under which "summary judgment is simply a vehicle for deciding the benefits issue": a district court, on review of a stipulated administrative record, engaging in the quintessential fact-finding exercises of weighing the evidence and making credibility judgments. *See Tekmen*, 55 F.4th at 959 (cleaned up). Nor may we simply assume, for the sake of efficiency, that the district court undertook a bench trial and review its findings accordingly, because that would entail review under a deferential "clearly erroneous" standard that neither the parties

7

nor the court would have anticipated while this case was before the district court. *Id.* at 961-62.

Accordingly, and to ensure full procedural fairness, we are compelled to vacate the judgment of the district court and remand for a Rule 52 bench trial consistent with *Tekmen*.

## III.

For the reasons given, the judgment of the district court is vacated and the case remanded for proceedings consistent with this opinion.

*VACATED AND REMANDED*